UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN F. WINSTON,
    Plaintiff,

v.                                                 C.A. No. 15-204S

DEPUTY WARDEN M. AUGER,
LIEUTENANT ODEN and BREK,
OFFICER NICHOLS, BARKER and
OFFICER PINHEIRO,
    Defendants.[1]

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

On May 13, 2015, Plaintiff John F. Winston, a prisoner held at the Adult Correctional Institutions ("ACI"), filed a hand-written *pro se* § 1983 complaint against six Rhode Island Department of Corrections ("DOC") employees based primarily on his claims that he received three false bookings, that Correctional Officer Baker took $300 from him and left on vacation and that several ACI employees stared at him while he was showering in the segregation unit. With his complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP"), ECF No. 2, which has been referred to me for report and recommendation.

### I.    **IFP Motion**

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), IFP status is not available to a prisoner who has brought three or more cases that were dismissed for failure to state a claim. Coleman v. Tollefson, 135 S. Ct. 1759, 1763 (May 18, 2015) (three strikes provision applies to prisoner who has on three or more occasions brought an action or appeal that

---

[1] This is the verbatim list of Defendants named in Plaintiff's complaint regardless of spelling. ECF No. 1 at 1. Based on the text of the pleading, "Barker" is most likely Officer Baker.

was dismissed on certain grounds). Plaintiff qualifies as a three-striker based on the following cases filed in the District of Rhode Island:[2]

> Strike One: Winston v. Trahan, No. C.A.04-113 T, 2004 WL 1053065, at *1 (D.R.I. Apr. 8, 2004) (recommended complaint be dismissed for failure to state a claim because Winston asserted § 1983 claims against a private individual and sought to be released from custody; attempt to invoke diversity jurisdiction for alleged state tort claim also failed);
>
> Strike Two: Winston v. Jennies, No. 04-203 ML, 2004 WL 1559709, at *1 (D.R.I. June 7, 2004) (recommended complaint be dismissed for failure to state a claim because Plaintiff asserted § 1983 claims against a private individual; attempt to invoke diversity jurisdiction for alleged tort claim also failed);
>
> Strike Three: Winston v. Dziobek, No. 04-204 ML, 2004 WL 1559713, at *1 (D.R.I. June 8, 2004) (recommended complaint be dismissed for failure to state a claim because Plaintiff asserted § 1983 claims against private individuals; attempt to invoke diversity jurisdiction for alleged tort claim also failed);
>
> Strike Four: Winston v. Olivera, C.A. No. 15-042ML, slip op. at 2-3 (D.R.I. Feb. 12, 2015) (recommended complaint be dismissed for failure to state a claim because remedy sought under § 1983 was release from prison).

Each of these reports and recommendations was accepted by the District Court and each of the four actions was dismissed based on Plaintiff's failure to state a claim upon which relief can be granted. Accordingly, Plaintiff is not eligible for IFP status.

The PLRA carves out an exception to the three-strike rule for a case alleging that the prisoner is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). To invoke the exception, two elements must be met: the harm must be imminent and the claim for relief asserted must be for the alleviation of that threat of harm. Judd v. United States, C.A. No. 06-10172-PBS, 2010 WL 1904869, at *3 (D. Mass. May 5, 2010) (citing Judd v. Fed. Election

---

[2] This conclusion should not come as a surprise to Plaintiff. After the first three strikes in early 2004, in late 2004, Magistrate Judge Jacob Hagopian denied several of Plaintiff's IFP motions based on his status by then as a three-strike litigant. See Winston v. Attorney General of R.I., No. C.A.04-200 S, 2004 WL 2075419, at *1 (D.R.I. Aug. 23, 2004) ("The Court denied the motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(g)."); Winston v. Bannister House, No. C.A.04-202 T, 2004 WL 2075421, at *1 (D.R.I. Aug. 23, 2004) (same); Winston v. Providence Police Dep't, C.A. No. 04-201 T, slip op. at 2 (D.R.I. June 22, 2004) (IFP motion denied because Winston filed three lawsuits, which were dismissed for failure to state a claim).

Comm'n, 311 F. App'x 730, 731 (5th Cir. 2009)). The inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Johnson v. Warner, 200 F. App'x 270, 272 (4th Cir. 2006) (per curiam). The imminent danger exception does not apply – Plaintiff does not make any allegations from which an inference might be drawn that he is in danger of imminent serious physical injury nor does he seek alleviation of any threat of physical harm.

Alternatively, Plaintiff's IFP application should be denied because his supporting affidavit indicates that he has $4,585.97 in cash or in his account. ECF No. 2 at 2. Thus, it would appear that, even if he were not barred from proceeding IFP as a result of his pattern of meritless filings, he is not eligible based on the possession of assets that are more than sufficient to initiate a federal case.

Both because he is a three strike litigant and because he has funds that are more than sufficient to pay the filing fee and serve the defendants, I recommend that Plaintiff's IFP application be denied.

## II. Screening of Complaint

Because of the IFP application and Plaintiff's status as a prisoner, this case is subject to preliminary screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). This Court's duty to screen is not avoided by the denial of the IFP application. See Benbow v. Weeden, No. CA 13-334 ML, 2013 WL 4008698, at *2 (D.R.I. Aug. 5, 2013) (federal courts authorized at any time to dismiss action in which plaintiff seeks IFP status if action frivolous, malicious, fails to state claim upon which relief may be granted, or seeks monetary relief against defendant immune from such relief) (citing 28 U.S.C. §§ 1915(e)(2), 1915A; Denton v. Hernandez, 504 U.S. 25,

32–33 (1992)). Accordingly, I next turn to an examination of the substance of Plaintiff's complaint.

   a. Background

Plaintiff's filings are a challenge to decipher. Read with the deference due to the writings of a *pro se* litigant,[3] it is clear that Plaintiff alleges that Correctional Officer Baker took $300 from Plaintiff and left on vacation so the money was not returned to Plaintiff's account when it was supposed to be. ECF No. 1-1 at 1-2. The money appears to relate to items Plaintiff ordered for purchase and then returned. Id. at 3 (TV and radio ordered and returned without consent and money not placed back in account). When Plaintiff asked Lieutenant Oden how to file a grievance form to complain about the missing money, there was a verbal altercation resulting in the disciplinary infractions. Plaintiff claims that Lt. Oden, Officers Nichols and Pinheiro, and the Keefe Commissary[4] lied about the altercation and that Plaintiff's witnesses were never questioned before the bookings "were read to" him. After a hearing on the bookings, Plaintiff alleges that he improperly received ninety days of segregation. ECF No. 1 at 3-4. In his prayer for relief, Plaintiff seeks to be released from segregation, to be given a job within the ACI, to sue Officer Baker for taking $300 and have Officers Pinheiro and Nichols relieved of their duties at the maximum security prison for filing false bookings contrary to ACI disciplinary policy. ECF Nos. 1 at 4, 1-1 at 1. Plaintiff's statement that "I would like my time placed back where it was" amounts to a request for the return of his good time credit.

---

[3] Because Plaintiff is *pro se*, I have employed a liberal construction of his filings. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

[4] Plaintiff's allusion to "Keefe Commissary" apparently refers to the automated commissary management program at the ACI. See Keefe Commissary Network, http://keefegroup.com/companies/keefe-commissary-network-112 (last visited July 6, 2015). Keefe Commissary is not named as a defendant in this case.

Woven through Plaintiff's filings is the complaint that he cannot obtain a copy of his prisoner trust fund account statement from ACI staff, allegedly because "c/o Baker is on vacation with my $300.00." ECF No. 1-1 at 1. However, inconsistently, in a subsequent filing, Plaintiff also appears to allege that "c/o Barker, he put my money in my acc. when he came back from his trip." ECF No. 3 at 1. In this letter, he complains about the price charged for certain procedures, such as $6 for nail clipping, and his inability to get a "copy of the D.O.C. policy." Id.

Embedded in a letter incorporated in his complaint, Plaintiff appears to articulate a second cause of action based on invasion of privacy – he alleges that, while showering in segregation on April 17, 2015, he was stared at by "A.T. Wall, Captain Actae,[5] both of the wardens, and about three other men [he had] never seen before . . ., including staff." ECF No. 1-1 at 1. Then a female warden walked up to the shower area while he had his towel wrapped around his waist and for half of an hour people milled around the shower area while Plaintiff was trying to get dressed. Id. None of the named persons alleged to have been involved with the shower scene are named as defendants.

   b.  Standard of Review

Analysis of the merit of these claims begins with the hoary principle that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. Sandin v. Conner, 515 U.S. 472, 485-86 (1995) (disciplinary segregation, without more, does not implicate protected liberty interest so as to entitle prisoner to procedural protections of Due Process Clause). Only changes in prison conditions resulting from discipline imposed without

---

[5] This spelling is a best-guess; Plaintiff's handwriting in naming this individual is difficult to read.

appropriate due process that constitute "atypical" and "significant" hardships sufficient to give rise to the loss of a liberty interest are potentially actionable under § 1983. Id. at 486; Hewes v. R.I. Dep't of Corrs., No. C.A. 00-205 S, 2003 WL 751027, at *2 (D.R.I. Feb. 11, 2003) (quoting Sandin, 515 U.S. at 484); see also Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (prisoner must establish liberty interest to allege due process violation).

Despite the loss of many rights and privileges, prisoners retain a protected interest in their personal property, including their money in the prison trust account. Watrous v. Salisbury, No. C.A. 09-599 S, 2010 WL 2035364, at *3 (D.R.I. Apr. 27, 2010). However, a suit to recover such property is a matter governed by state law; federal law is implicated only when the deprivation of a property interest occasioned by the random and unauthorized conduct of a state official amounts to a due process violation because of the inadequacy of the state's post-deprivation remedies. Id., at *4 (citing Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005)). By contrast, prisoners are entitled to very little if any privacy – courts recognize that the need to watch prisoners closely is a legitimate institutional concern, including when prisoners are using the bathroom or showering. Sanders v. Kingston, 53 F. App'x 781, 784 (7th Cir. 2002); see also Cable v. Wall, C.A. No. 09-439 ML, 2010 WL 1486494, at *8 (D.R.I. Mar. 18, 2010) (plaintiff's invasion of privacy claim based on cameras in maximum security showers fails to state claim upon which relief may be granted) (citing Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995) ("Inter-prisoner violence is endemic, so constant vigilance without regard to the state of the prisoners' dress is essential. Vigilance over showers, vigilance over cells – vigilance everywhere, which means that guards gaze upon naked inmates.")).

c. Analysis

The most serious allegation in Plaintiff's complaint is that he was wrongly punished with ninety days in segregation based on false bookings contrary to ACI policy. Pursuant to Sandin and its progeny, for such a complaint to state a viable claim, Plaintiff must plead more than placement in disciplinary segregation for ninety days. See Cook v. Wall, No. 09-169S, 2013 WL 773444, at *1-2 (D.R.I. Feb. 28, 2013) (liberty interest implicated where allegations in aggregate show prisoner placed in disciplinary segregation without hearing or evidence and with improper notice of disciplinary decision). He must plausibly allege that his punishment not only violated ACI policy, but also inflicted punishment that is "atypical and imposes a significant hardship." Sandin, 515 U.S. 486. Lacking such an allegation, this complaint does not adequately plead the loss of a liberty interest; accordingly, all claims based on the three bookings and the segregation imposed as a consequence must be dismissed for failure to state a claim. See Lekas v. Briley, 405 F.3d 602, 613 (7th Cir. 2005) (disciplinary segregation alone does not necessarily produce "atypical and significant hardship" under Sandin); Petaway v. C/O Duarte, C.A. No. 11-497-ML, 2012 WL 1883506, at *3 (D.R.I. May 22, 2012) (thirty days of punitive segregation is not "atypical and significant" hardship).

Relatedly, to the extent that Plaintiff's complaint is based on the loss of, or seeks recovery for, good time credit, it also fails to state a claim. The cases interpreting the applicable Rhode Island statute make clear that the loss of good time credit cannot amount to the loss of a liberty interest as a matter of law. Almeida v. Wall, No. 08-184S, 2008 WL 5377924, at *7 (D.R.I. Dec. 23, 2008) (Rhode Island good time credit statute is discretionary and does not create a liberty interest); see also Moore v. Begones, No. 09-543 S, 2010 WL 27482, at *4 (D.R.I. Jan. 4, 2010) (same). Similarly, to the extent that Plaintiff's claim of entitlement to good time credit

7

relates to the length of his sentence, his claim cannot clear the bar in Heck v. Humphrey, 512 U.S. 477, 487 (1994), which holds that, when a prisoner seeks damages pursuant to § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" in a habeas proceeding. See also Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applies Heck to prison disciplinary proceedings).

Plaintiff is free to sue Officer Baker in state court if his property has not been returned; however, his allegation that Officer Baker stole $300 from him lacks merit as a federal cause of action. While Plaintiff has a protected interest in his money, Watrous, 2010 WL 2035364, at *3, his complaint does not allege that post-deprivation state remedies were unavailable; accordingly, Plaintiff has failed to state a viable federal procedural due process claim. See id., at *5. As long as Plaintiff can sue to recover his money in the state court, his federal claim against Officer Baker lacks merit and must be dismissed.

Finally, Plaintiff has failed to state an actionable claim of violation of his right to personal privacy. Prisoners are entitled to very little, if any, privacy, even when showering, Sanders, 53 F. App'x at 784, because privacy is the thing most surely extinguished by a judgment committing someone to prison. Johnson v. Phelan, 69 F.3d at 146. At most, inmates possess a limited right of bodily privacy; for example, courts have recognized the right to freedom from the involuntary viewing of a prisoner's private parts by guards of the opposite sex. Johnson v. Tremper, 38 F. App'x 665, 666 (2d Cir. 2002). Here, at most Plaintiff alleges that a female warden viewed him "with my bath towel wrapped around me." ECF No. 1-1 at 1.

Accordingly, Plaintiff's complaint that his privacy was not respected fails to state a viable federal claim.

### III. Conclusion

In light of the foregoing, I recommend that Plaintiff's motion for leave to proceed *in forma pauperis* be DENIED. Further, I recommend that the action be DISMISSED for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (dismissal of suits that fail to state a claim on which relief may be granted) and 28 U.S.C. § 1915A (dismissal of suits against governmental officers because they fail to state a claim on which relief may be granted), with leave to file an Amended Complaint that addresses the deficiencies identified in this report and recommendation within thirty days of this Court's adoption of it. Brown v. Rhode Island, No. 12-1403, 2013 WL 646489, at *6 (1st Cir. Feb. 22, 2013) (per curiam). If Plaintiff files such an Amended Complaint, I further recommend that he be ordered to pay the filing fee at the same time and that, if he fails to pay, I recommend that his Amended Complaint be DISMISSED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 6, 2015